UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF ALABAMA

In re:  Case No. 06-10845-DHW
         Chapter 13
DAVID E. ANDERSON
KERI E. ANDERSON,

  Debtors.

## MEMORANDUM OPINION

Currently before the court is the Alabama Department of Human Resources' (hereinafter "DHR") objection to the debtors' motion for discharge. There, DHR asserts that its claim is a priority domestic support obligation (hereinafter "DSO") arising from a food assistance benefit overpayment, and, hence, the claim is excepted from discharge.

The debtors rebut contending first that DHR's claim is not entitled to DSO status. Secondly, the debtors contend that even if DHR's claim enjoys DSO status, its claim is nevertheless dischargeable because DSO claims owed to a governmental unit are not required to be paid in full under a chapter 13 plan. Thirdly, the debtors argue that their confirmed plan, which provided for DHR's claim as a general, nonpriority unsecured claim, was binding upon DHR. Finally, the debtors argue that DHR's contention that its claim enjoys priority status should be barred under the equitable doctrine of laches.

Upon consideration of the stipulated facts, the law, and the arguments of counsel put forth in brief, the court finds that DHR's objection to the debtors' motion for discharge should be overruled and that an order of discharge under 11 U.S.C. § 1328 should enter.

### Jurisdiction

This court's jurisdiction in this dispute arises from 28 U.S.C. § 1334 and from an order of the United States District Court for this district referring its title 11 jurisdiction to the Bankruptcy Court. *See* General Order of Reference of Bankruptcy Matters (M.D. Ala. Apr. 23, 1985). Further, this is a core proceeding pursuant to 28

U.S.C. § 157(b)(2)(J). As a result, the court's jurisdiction is extended to the entry of a final order or judgment.

Findings of Fact

Counsel for the parties have filed a joint stipulation of undisputed facts (Doc. #50). The court adopts those facts as the facts in this case and summarizes them as follows.

From September 2004 through July 2005, the debtors received food assistance benefits from DHR, a governmental unit which administers federal food assistance benefits in the State of Alabama. In their application for those benefits, the debtors indicated that their household was comprised of themselves and one child. While the debtors received those benefits, they failed to report income which would have resulted in either a reduction or an elimination of their eligible benefit.

The debtors filed the instant chapter 13 petition on August 15, 2006. On September 26, 2006, DHR filed a $2,342.85 proof of claim designating its status as an "unsecured nonpriority claim." Throughout the course of this chapter 13 proceeding, DHR has not amended its proof of claim to assert priority DSO status.

On November 29, 2006, the debtors' plan was confirmed. DHR did not object to the plan's confirmation. The plan provided, *inter alia*, that unsecured creditors would receive a pro-rata share of $2,000. Through the course of the plan's administration, DHR received $319.26 leaving an unpaid balance to date of $2,023.59.

On February 11, 2010, the chapter 13 trustee filed a notice of completion of the debtors' plan notifying parties that all payments required by the confirmed plan had been made. Thereafter, on March 15, 2010, the debtors filed a motion seeking an order of discharge pursuant to 11 U.S.C. § 1328(a). On April 2, 2010, DHR filed the instant objection to the debtors' motion for discharge, which is the subject of this dispute.

2

Conclusions of Law

First, the debtors contend that DHR's claim does not qualify as a DSO. The term 'DSO' is defined by the statute.[1] Under the statute, in order for DHR's claim in this case to be entitled to DSO status, the claim must satisfy four separate requirements. The claim must:

1) be a debt to a governmental unit (§ 101(14A)(ii));
2) be in the nature of alimony, maintenance, support of the debtors' child (§ 101(14A)(B));
3) which is established in accordance with applicable nonbankruptcy law by a governmental unit (§ 101(14A)(C)(iii)); and
4) which was not assigned to the governmental unit (§ 101(14A)(D)).

The debtors contend that DHR's claim for food stamp benefits overpayment is not in the nature of support of the debtors' child. In essence, the debtors assert that an overpayment of food stamp benefits does not lie within the bounds of traditional alimony, maintenance and support scenarios giving rise to DSO claims. The court, however, disagrees.

The issue of whether a food stamp overpayment claim was in the nature of support of the debtor's child was addressed by the court in *Wisc. Dept. of Workforce Dev. v. Ratliff*, 390 B.R. 607 (E.D. Wisc. 2008). The court in *Ratliff* held that an overpayment of food stamp benefits was in the nature of support of the debtor's children and that the claim qualified as a DSO. *Id.* at 617. The court reasoned that

---

[1] The statute provides:
"(14A) The term 'domestic support obligation' means a debt that accrues before, on, or after the date of the order for relief in a case under this title, including interest that accrues on that debt as provided under applicable nonbankruptcy law notwithstanding any other provision of this title, that is–
    (A) owed to or recoverable by–
        (I) a spouse, former spouse, or child of the debtor or such child's parent, legal guardian, or responsible relative; or
        (ii) a governmental unit;
    (B) in the nature of alimony, maintenance, or support (including assistance provided by a governmental unit) of such spouse, former spouse, or child of the debtor or such child's parent, without regard to whether such debt is expressly so designated;"

3

the food stamp program provides assistance to "low-income households to alleviate hunger and malnutrition among economically disadvantaged." *Id.* at 615. The ability to obtain food was found to be a basic support for the debtor's children, and that an "obligation that serves to maintain daily necessities such as food, housing and transportation" is in the nature of support. *Id.* (quoting *In re Gianakas*, 917 F.2d 759, 763 (3d Cir. 1990). *See also In re Wheeler*, 210 WL 5013112 (Bankr. N.D. Ala. Feb. 5, 2009) (holding similarly).

Next, the debtors contend, and DHR does not dispute, that if DHR's claim qualifies as a DSO, it is one under Section 507(a)(1)(B).[2] Generally, priority claims must be paid in full under chapter 13 plans, but the statute contains an exception. Section 1322(a)(4) permits certain chapter 13 debtors to pay Section 507(a)(1)(B) DSOs in an amount less than in full.[3] Because the Code does not require that a Section 507(a)(1)(B) to claim to be fully paid, the debtors argue that the unpaid balance must be discharged. Again, the court disagrees.

When a debtor completes payments under a chapter 13 plan, he or she is eligible to receive a discharge under Section 1328(a). Nevertheless, certain debts are not dischargeable under that section. One of those nondischargeable debts is a debt for a DSO.[4] While the court agrees with the debtors in this case that their plan permissibly provided for less than full payment of DHR's DSO claim, the plain language of the statute excepts the unpaid balance of the DSO claim from discharge.

---

[2] DSO claims enjoy the first priority among unsecured claims. The statute fixing the priority of unsecured claims, Section 507, divides DSO claims into two types. First, DSOs owed to an individual or governmental unit as assignee of an individual are at Section 507(a)(1)(A). DSOs owed to a governmental unit in its own right are at Section 507(a)(1)(B).

[3] Under Section 1322(a)(4), only debtors who are paying all their disposable income under the plan may pay a Section 507(a)(1)(B) claim in an amount less than in full. DHR does not dispute that the debtors in this case are paying all their disposable income under the plan.

[4] Section 1328(a)(2) provides that debts of the kind specified in Section 523(a)(5) are not dischargeable. Section 523(a)(5) debts are those for "a domestic support obligation" regardless of whether it is of the Section 507(a)(1)(A) or (B) variety.

4

Further, the debtors argue that DHR is bound by the terms of the confirmed plan precluding it from now asserting a priority status for its claim. Here, the court agrees.

Pursuant to Section 1327, the confirmed plan binds "the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan and whether or not such creditor has objected to, has accepted, or has rejected the plan." 11 U.S.C. § 1327(a). The *res judicata* effect of Section 1327, however, is effective to bind the creditor only if the creditor is accorded due process having been given notice of the plan and an opportunity to object. *In re Espinosa*, ___ U.S. ___, 130 S.Ct. 1367, 1378, 176 L.Ed2d 158 (2010). In the case *sub judice*, DHR had notice of the debtors' plan, which treated its claim as a general, unsecured one. Further, DHR filed its claim as a general unsecured one. DHR did not object to the plan's confirmation. Finally, DHR received payments as an unsecured creditor throughout the plan's administration. Under the facts of this case, the court holds that DHR is bound, pursuant to Section 1327, to the terms of the debtors' plan providing for its claim as a general unsecured one. *See also In re Bateman*, 331 F.3d 821, 883 (11th Cir. 2003)(refusing to unravel the plan, which would not have been confirmed over objection, when a creditor with notice of the plan's provisions failed to object to confirmation).

Finally, even if DHR was not bound to the terms of the confirmed plan by the *res judicata* effect of Section 1327, it is estopped under the equitable doctrine of laches from asserting that its claim is a priority one. To prevail on the defense of laches, the debtors must "establish that there was a delay in collection of the debt that cannot be excused and that prejudiced the [debtors]." *In re Baggett Bros. Farm, Inc.*, 315 Fed. Appx. 840, 843 (11th Cir. 2009). "Laches is more than a delay. It is time plus prejudicial harm ... [and] that delay has subjected [the debtors] to a disadvantage in asserting and establishing [their] claimed right or defense." *Id.* (quoting *In re Casco Chem. Co.*, 335 F.2d 645, 651 (5th Cir. 1964).

DHR filed its general unsecured claim in this case in September 2006 and did nothing to assert its right to a priority claim until it filed the instant objection to the debtors' motion for discharge almost four years later. DHR did not object to the debtors' plan; it did not amend its claim. Under the facts of this case, DHR's delay in insisting that its claim is a priority one cannot be excused. Further, to allow the claim as a priority one at this late date would be prejudicial to the debtors. First, the

5

debtors have completed payments under their plan and are prevented by the statute from modifying the plan. *See* 11 U.S.C. § 1329 which permits modification of a confirmed plan between confirmation and completion of payments under the plan. Second, even if the statute permitted modification of their plan, there is too little time remaining to permit the debtors to pay the unpaid balance of DHR's claim. Additionally, holding this debt nondischargeable as a result of DHR's having slumbered on its rights would deprive the debtors of the "fresh start" that they sought at the inception of this case. Hence, the court finds that DHR is estopped by the doctrine of laches from asserting a priority claim.

Conclusion

For the foregoing reasons, the court finds that the debtors' motion for discharge under Section 1328(a) should be granted, and DHR's objection to the motion be overruled. A separate order consistent with this memorandum opinion will enter accordingly.

Done this the 16th day of August, 2010.

/s/ Dwight H. Williams, Jr.
United States Bankruptcy Judge

cc: Debtors
   Michael Brock, Counsel for Debtors
   Troy King, Attorney General
   Sharon E. Ficquette, Assistant Attorney General
   James E. Long, Deputy Attorney General
   Curtis C. Reding, Trustee

6